Good morning, Your Honors. David Alkire for the appellant, David Walker. May it please the Court. The Court will recall that this is the case where, in the trial 10 years ago, the defense attorney neglected to make a motion to suppress the defendant's statement, but put on the record, on the reporter's transcript, an explanation of why she was failing to make the motion to suppress. What brings us here today is whether the defendant suffered ineffective assistance of counsel by virtue of that failure to make a motion to suppress. The reason was Elstad, wasn't it? The reason later identified by the courts for affirming or, rather, for denying the habeas corpus petition was Elstad. Yes, Your Honor. That, of course, was not considered before the trial court because none of the facts were elicited on the record and the law was not discussed. It simply was a motion that was not made. Now, there was a recent decision in Missouri against Siebert, which I belatedly brought to Your Honor's attention. I'm sure you're familiar with it, decided last June. This is not, of course, new law. Indeed, even the three dissenters relied upon their reading of Oregon against Elstad. It's also not binding, is it? It's a plurality decision and not binding on the Ninth Circuit, is it? Well, I would describe it as helpful rather than instructive, yes. But the facts in Siebert were the court was talking about a situation where the un-Mirandi statement was used as somewhat of a trap to weaken the defendant so that he then, after he's Mirandized, figured, well, the cat is out of the bag and I've got to go ahead and give this second statement. And isn't it pretty much limited to that? These facts here are not the same. And, in fact, the defendant here, the appellant, says something about you guys were fine, you were fair, you didn't coerce me on the earlier statement at all. I think what's noteworthy is when he said that. It was after approximately eight hours since his arrest. He was arrested shortly after 12 noon. The tape recorder was turned on shortly after 7 p.m. That was when he was given a Miranda admonition. That tape recorder statement was given before an officer who was not the same one who interrogated him originally. Isn't that true? I would respectfully disagree, Your Honor. The two detectives who were present at the scene of his arrest at gunpoint shortly after 12 noon were the detectives assigned to the case. They are the ones who But even, let's assume for the moment that Siebert does apply and let's assume that it was error to allow the taped statement in. The statement really wasn't that incriminating. I mean, they had other evidence that he was present at the scene and that the statement was it was an accident. I didn't intend to shoot him. And the facts of the case, where he broke down, he was crying and so on. And he's kind of didn't even know that he had shot him or something to that effect. It was just one of those freak things that it was not an intentional killing, which the jury chose not to believe, of course. But so it wasn't it wasn't a case where this was not the smoking gun of the usual case where you're admitting evidence that should have been excluded. Your Honor, the evidence apart from his tape recorded statement was virtually entirely circumstantial. The principal testimony came from two witnesses who were brought from prison and testified under grants of immunity against him. And the statement that was actually that goes to their credibility and the jury chose to believe Well, yes, of course, because they had also listened to a tape recorded statement of the defendant in which he admitted being the person who was standing there and shot the sawed off shotgun at the victim. That is a decision the defendant should have been able to make free of having taped statement taken in violation of Miranda first played to the jury. The issue also is not simply a question of was there other evidence. This was addressed by the Court of Appeals in California when it affirmed his conviction. I quoted the concluding paragraph of that opinion. And basically what the court said was, well, yes, he makes strong arguments that this is not a first degree murder, that this is not a murder, that it may have been a rash impulse referring to the manslaughter standard. The court, however, affirmed the conviction because there was a basis from which the jury could have concluded that it was a murder. The problem is that he, by having to put up with the evidence of his own recorded statement, was deprived of the opportunity to present his evidence in his way during his part of the case, either take the witness stand or not take the witness stand free of that kind of taint. Let me ask you on the nature of these statements. Am I correct that there's no argument made that the first statement was coerced as opposed to voluntary? Well, it depends on who you ask. If you ask me, the first statement was coerced. The district court opinion rejecting this habeas corpus petition suggested that there was no contention in the pro se petition of coercion. However, if you take a look at that petition, which he wrote himself, he was unrepresented by counsel for a period of close to eight years, I think, in these things. When you look at that, I suggest that presents precisely the evidence that courts have identified as coercive. Perhaps you can clear up then as to the second statement. It seemed to me that in reading the argument that the second statement was coerced, but then I got to the gray brief, and it seemed to me that the argument was made there. Was that made in the blue brief? The problem is the fuzziness of the interplay. What's the answer to the question? Yes, it was mentioned, but hardly highlighted. But could you maybe help me out? Because I was hunting and pecking looking for it. And if I'm wrong, I would like to know that it's in the blue brief so I can consider it in that light. But I only found it in the gray brief. Maybe what you can do is we have a little piece of paper that the clerks have for supplemental, and you can just write down the page number, provide a copy to your counsel there, and a copy to the clerk, rather than taking your argument time. Thank you. The problem that exists in this case is one that was discussed in United States against Orso, the en banc decision of this circuit's court of appeals, on this question of the effect of Oregon against Elstad. And I was particularly interested in the concurring opinion in that case. In that case, Ms. Orso's claim was rejected under the authority of Oregon against Elstad, but the court concurring was particularly concerned with a deliberate failure to advise her of her rights, and the concern that they take a dim view of deliberate in contrast to inadvertent or technical failures to advise an accused of his constitutional rights. You're talking about the unanimous en banc opinion? I'm sorry? Are you talking about the unanimous en banc opinion? Yes, which contains a concurrence which basically concludes by saying because they cannot say under existing precedent the inspector's conduct was so coercive that Orso lacked sufficient free will to decide whether to waive her rights. Isn't that exactly what you have here? No. No. The Orso case involves 15 minutes of conversation preceded by an admonition, you better not talk to me about this. This case involves seven hours, including an hour and a half of sit-down questioning in which the defendant was told, no, you're not telling the truth after he denied any involvement, in which in his habeas corpus petition that he wrote, he was shown a photograph of the victim, no, I don't know him, said, no, you're lying and you better come clean. We have you, we got you for first-degree murder in substance is what they told him. That's completely different. Are you arguing now that this was a coerced statement, the first one? I'm not arguing now. I am following up on the argument that was made previously that the initial method of questioning this defendant combined with the absence of a Miranda admonition is something this court must consider in determining whether the ultimate Miranda admonition that he received shortly after seven o'clock was an effective admonition within the meaning of Missouri against Siebert. How can you rely on Siebert? I don't understand how you can Aren't you barred at least by Teague, the new rule rule? No, it's not a new rule. Why isn't it? Because all nine of the justices, including the three dissenters, relied upon Oregon against Elstad. No author of any concurrence or opinion in Missouri against Siebert suggested they were in any way withdrawing or rejecting a holding of Oregon against Elstad. Rather, it was a gloss. It was instructive. And for that reason, I believe it's appropriate to look at it. I don't have to go into the Teague area because it does not announce a new rule of any kind. It clarifies and explains the existing rule. I don't see why we have to put blinders on. We won't wear blinders. I meant us. Thank you. You're welcome. May it please the court. Jeff Firestone for the California Attorney General's Office, representing the warden. I believe it's warden. Marshall's been substituted in. Regarding the last point that this court talked with counsel about as far as Missouri versus this year, as far as ADEPA goes, the law has to be clearly established U.S. Supreme Court precedent. That wasn't established at the time the state superior court ruled on the petitioner's petition. Also, Teague versus Lane would apply to that because as Missouri versus Siebert notes, the technique of interrogating in successive unworn and worn phases raises a new challenge to Miranda. In that case, they dealt with a procedure whereby it was a question first, Mirandize later approach, and it was deliberately done to do an end run around Miranda, whereas that wasn't present in Oregon v. Elstad, and there's no indication that that was present in this case. Also, in granting the petition for Rita Sorcerari in that case, the United States Supreme Court noted that it was doing so because there was a difference of opinion as far as in the circuit courts of appeal, and therefore, the lay of the land, it was an unsettled area of law, and in fact, the case that was from the ninth circuit, that was U.S. versus Orso, which was decided again after the state superior court dealt with this, but that found that there wouldn't be any exclusionary rule as far as like a fruit of the poisonous tree. If there hadn't been Miranda initially, then we would exclude a subsequently Mirandize statement. So it wasn't clearly established. It wouldn't apply. Teague principles would bar consideration of it. The counsel says still it provides some guidance. Well, they did look at Oregon v. Elstad, and one thing I noted in looking at that is that as far as coercion issue goes, I couldn't find in the brief, either in the blue brief, where counsel said that the first statement was coerced. As far as coercion goes, the dissent in Missouri v. Siebert, Justice O'Connor recognized that the cat out of the bag is not a sufficient form of coercion, and they found out that, excuse me, what she says is we rejected the theory outright. We did not do so because we refused to recognize the psychological impact of the suspect's conviction that he had let the cat out of the bag, but because we refused to endow those psychological effects with constitutional implications. And so the fact the cat was out of the bag here, that wouldn't be enough psychological coercion to find that his second statement was coerced. We don't have any evidence that his statement was involuntary. As the judge noted that he mentioned at the end of his admission, his statement, that there were no threats by the officers. They were right. They were good officers, good people. It's what his heart told him to tell the officers. It's right. It's the truth. And I also noticed that during that tape statement, and it's at the Excerpts of Record, Excerpt of Record, Exhibit 2, pages 19 or 20, they have alternate pages on them, but when the point where the tape is turned over, the officer says, and he acknowledges, that you said that several times you thought about calling the cops or calling the police. So you can infer from that that he wanted to get this off his chest. He wanted to talk to the officers. In fact, he went on to say, I know what happened wasn't right. I feel sorry for it. I hope God understands. So again, this is a petitioner who wanted to talk to the officers, and he wanted to tell it. As far as counsel's brief portrays this, it was a seven-hour marathon of questioning where they were interrogating him over the seven-hour period. That's not exactly the case. It was interspersed with breaks. First, he talked to the officers. Initially, he denied it as far as any involvement. The officers confronted him with evidence of his guilt. U.S. v. Orso says that confronting a suspect with evidence of their guilt, that can't amount to coercion. He then... Would you give me the time frame, refresh my recollection, when the fellow who helped him with the body told that to the detectives? When was that? Was that before any of this interrogation? Yes. That's my understanding. I believe it was. They went and they dug up the body then? Did they? I mean, they found the body and all? I believe so. They executed a search warrant at his home. They found blood splatters in his home. They had seized carpet samples for purposes of comparing with the body. So, yes. The search warrant was executed for his home the night before his arrest. Okay. But how about the body? Did they find the body before the arrest? Oh, yes. I believe so. I assume so, but I just wasn't sure. And as far as the facts of the crime, counsel, this is a circumstantial case. We've got an eyewitness, Lauren Shankle, who witnessed the killing. The defendant was angry. He was upset. He went to his... Did he witness the killing or did he witness the gun in his hand? Actually, he witnessed a couple of things. He perceived the shooting as far as he heard it. Okay. So he didn't see it? He didn't actually see it. But what he saw was the defendant had the victim cornered in the kitchen with basically no room of escape. The defendant was holding a sawed-off shotgun that was filled with score shells that had previously been marked and made them more deadly. The defendant was angry. He was upset. He mentioned something. And Shankle says he mentioned something about his deed. And apparently the motive was that defendant thought that the victim was going to sell off his deed. The defendant cocked the gun, and Mr. Shankle witnessed that as well. And as far as his manner of handling the gun, it was totally different than how he'd been holding it before. He cocked the gun, he lowered it, and he cursed. And he said, I believe it was, fuck it, fuck it, fuck you. Excuse me for cursing, but that's what he said. And then that's when Mr. Shankle heard the gun going off. And so we've got the lowering of the gun, we've got his words which indicate an intent to kill, and the jury, that's what they found, was a specific intent to kill, first-degree murder. As far as what the standard here is, whether or not the state court application of Oregon was an unreasonable application. They clearly applied the correct standard of law. It's not contrary to you, Supreme Court President. They've applied Oregon v. Elstead. It's not an objectively unreasonable application. Counsel says, well, he cites Taylor v. Maddox, well, there was no factual finding made. The state court, what the superior court did was it pretty much adopted hook, line, and sinker, everything that Petitioner Walker said. And they assumed that he hadn't been given his rights initially, that he had been interrogated, that he ultimately admitted his involvement. Then he made an agreement to go show the officers, try to locate the weapon in exchange for him being able to see his family. And then he made a tape-recorded statement. So they bought everything that he said, and they still found that under Oregon v. Elstead, it was not a coerced statement. It was voluntary. And then the issue here, the ineffective assistance of counsel, they implied they found Strickland was applied and that it was counsel's performance wasn't deficient. And here we've got a situation where it's not an unknown. Counsel specifically says, look, I thought about bringing an evidence code section 402 challenge to the statement. I've heard that the client mentioned to her that he hadn't been Mirandized initially, assuming that that is true. And she looked at the situation, and she found that it was completely voluntary and that there was no basis to challenge the statement. And so as the state, excuse me, as a U.S. District Court judge found is that counsel can't be faulted for failing to make idle motions. And here, Oregon v. Elstead would have barred counsel from succeeding in such a motion, and therefore, counsel wasn't ineffective. And again, it boils down to whether or not the state's application was unreasonable. And we submit that it wasn't subjectionably unreasonable. Thank you, counsel. Mr. Alfire, would you care to respond? Just briefly to that last point, counsel had explained at length the issue of the unreasonable application. What I attempted to do in the reply brief was point out that there was no factual inquiry whatsoever undertaken by the state court. Rather, it was simply a citation of Oregon v. Elstead in the manner that was discussed in the briefs. That's an alternative basis around the AEDPA requirement that would otherwise perhaps deny this court the opportunity to consider this on the merits. Are you referring to the attachment of the law clerk's memo? Yes. Why can't we consider that as the judge's reasoning, having attached it to the order? It's not the word reasoning I'm focusing on. That goes to the aspect of is it an unreasonable application of the law. I'm focusing on the complete absence of the eliciting of facts that would enable the court properly to apply Oregon v. Elstead. So your argument is if a state court does not articulate specific facts, ergo, it can't meet AEDPA because there's no factual basis on which to rest the legal argument? I am reluctant to state that as a general principle. I will state it in this case when there is no inquiry whatsoever into the facts. It's not just a question of failing to state facts to support the order. There was no inquiry at all. And the record we had to piece together 10 years after the fact because we have to draw it. To cast that in terms of Taylor, what you're saying is if you take a look at the either two approaches to the findings of fact, extrinsic and intrinsic, and you're saying if you use an extrinsic approach as defined in Taylor, you find a deficient fact-finding process. Is that what you're saying? I may well be saying that. I'd have to think about it at length. But since I'm the one who cited Taylor against Maddox, I'll have to answer that. I'll say yes. I guess that's what I'm saying. Okay. What I thought I was saying, though, is that when there is no inquiry into the facts, that under Taylor against Maddox is per se... Santa Claus. Thank you. That simply fails as a matter of law to comply with that standard. I think Judge Kaczynski calls that the extrinsic test. Well, then, that's what I call it, too. Thank you. Thank you. The case is argued as ordered. Submit it. Ambrice versus Hickman.
judges: Meskill, Trott, McKeown